UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAURIE VELEZ,

Plaintiff,

-against-

YELLOWPAGES.COM LLC, YP LLC, YP HOLDINGS LLC, THRYV, INC., and DANIEL SORTY,

Defendants.

26-CV-19 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Laurie Velez, a licensed massage therapist, brings this action for defamation and infliction of emotional distress against Defendants Yellowpages.com LLC, YP LLC, YP Holdings LLC, Thryv, Inc., and Daniel Storey. Plaintiff alleges that Defendants falsely associated her business listing on www.yellowpages.com with certain search terms—"exotic," "Russian," and "nude, gay massage"—that are sexually suggestive, which is most decidedly not Plaintiff's line of work.

Before the Court is Defendant Thryv, Inc.'s ("Thryv's") and Defendant Storey's separate Motions to Transfer Venue, Motions to Dismiss, and Motions to Strike. For the reasons stated herein, the Court denies Defendants' motions to strike certain declarations filed by Plaintiff, but grants in part Defendants' motions in the alternative to disregard those documents; denies Defendants' motions to transfer; grants Storey's motion to dismiss for lack of personal jurisdiction; and grants in part and denies in part Defendants' motions to dismiss the Complaint for failure to state a claim.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Complaint, ECF No. 1-1 ("Compl."), and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiff Laurie Velez is a licensed massage therapist, who resides and works as an independent contractor in Orange County, New York. Compl. ¶¶ 1–2. Plaintiff alleges that Defendants Yellowpages.com LLC, YP LLC, YP Holdings LLC, and Thryv (collectively, the "Entity Defendants") are "digital advertising agenc[ies] providing business listings and marketing solutions." *Id.* ¶¶ 23–26.[1] Specifically, the Entity Defendants operate www.yellowpages.com (the "Website"), which "disseminates business listings and information to the public at large." *Id.* ¶¶ 27–30. Plaintiff "was listed on [the Website] as a licensed massage therapist." *Id.* ¶ 52.

Sometime prior to February 7, 2025, Plaintiff contacted Yellowpages.com LLC to update her business listing. *Id.* ¶¶ 52–53. At that time, Plaintiff spoke with Defendant Daniel Storey,[2] who is identified only as an employee of the Entity Defendants. *Id.* ¶¶ 53–57. Subsequently, on or about February 7, 2025, Plaintiff googled herself and, to her surprise, saw her massage business listed on the Website as "exotic," "Russian," and "nude, gay massage." *Id.* ¶¶ 58–59.

[1] Specifically, Plaintiff alleges that YP LLC and Thryv are parent companies of YP Holdings LLC, and that YP LLC "is part of" YP Holdings LLC. Compl. ¶¶ 20–22. Defendant Thryv clarifies that "Thryv is the sole surviving entity following a series of mergers involving the three other named [entity] defendants, Yellowpages.com, LLC, YP, LLC, and YP Holdings, LLC." ECF No. 20 ("Thryv MTD") at 4.

[2] Plaintiff names "Daniel Sorty" as a Defendant in her complaint. *See* ECF No. 1-1. However, in his appearances before this Court, this Defendant refers to himself as "Daniel Storey." *See, e.g.*, ECF No. 31-1 ¶ 1 ("Storey Decl.") ("My name is Daniel Storey, and I am one of the defendants named in the above captioned lawsuit. My name is misspelled in the case caption as 'Daniel Sorty.'"). The Court therefore refers to this defendant throughout this Opinion as Daniel Storey.

Plaintiff's screenshots of the advertisements at issue are attached to the Complaint. *See id.* at 41–44. These screenshots show YellowPages associating Plaintiff's name and work address with the phrases "Russian Massage in Newburgh, NY," "Nude Gay Massage in Newburgh, NY," and "Exotic Massage in Newburgh, NY." *Id.* Plaintiff alleges that Defendants' statements "were false, inaccurate, and not true." *Id.* ¶ 61.

Consequently, several days later, Velez contacted Defendants "to have her business listing corrected and/or removed." *Id.* ¶ 71. However, despite Plaintiff's verbal request, Defendants continue to publicly publish Plaintiff's listing without change. *Id.* ¶ 72. Plaintiff alleges that the "false and inaccurate statements . . . have harmed and will continue to harm" her in both her personal and professional capacities. *Id.* ¶¶ 64–65.

On December 4, 2025, Plaintiff filed her complaint in the Orange County Supreme Court. *See id.* at 2. Plaintiff principally asserts three claims—for defamation/defamation per se (Counts 1, 4, 7, 10, and 13), negligent infliction of emotional distress ("NIED") (Counts 2, 5, 8, 11, and 14), and intentional infliction of emotional distress ("IIED") (Counts 3, 6, 9, 12, and 15)—against each named Defendant. *See id.* ¶¶ 51–216. The sixteenth "cause of action" consists of Plaintiff's request for punitive damages and compensatory damages in the amount of $15 million. *Id.* ¶¶ 218–19.

On January 2, 2026, Thryv removed the instant case to this Court, on diversity grounds. ECF No. 1 at 1–4. On February 17, 2026, the Court found that complete diversity existed among the parties. ECF No. 22.

On February 9, 2026, Thryv filed the present Motion to Transfer the case to the Northern District of Texas, or in the alternative, to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 18; Thryv MTD. In support of its Motion to Transfer, Thryv filed a

declaration by Karl Good, a "Manager of Client Care" and "custodian of records for Thryv." ECF No. 19 ("Good Decl.") ¶ 1. Good declared that "[a]ll users of Thryv's Yellowpages.com website and all business owners who provide information to Thryv in connection with their free business listings that appear on the website are subject to the terms of use published on the website." *Id.* ¶ 4. Good also stated that "[t]he Terms of Use are hyperlinked and accessible from the YellowPages.com website," and that, "[a]s a user and business listed on the Yellowpages.com website, Plaintiff agreed to be bound by the Terms of Use provided thereon." *Id.* ¶¶ 5–6.

Attached to Good's declaration is a copy of the Terms of Use provided on the Yellowpages.com website. ECF 19-1 ("Terms of Use"). These Terms of Use state that

> Exclusive venue and jurisdiction for all claims and disputes that are not subject to Informal Dispute Resolution . . . shall be in the state and federal courts located in Tarrant County, Texas, and you hereby consent and submit to the exclusive jurisdiction and venue of those courts and waive any defenses or objections based on the jurisdiction, venue, or convenience of these exclusive venues.

Terms of Use ¶ 6.1.

In opposition to this motion, on March 2, 2026, Plaintiff submitted a "[d]eclaration in [o]pposition" by Plaintiff's counsel, Lawrence D. Lissauer. ECF No. 24 ("Lissauer Decl. I"). One week later, on March 9, 2026, Thryv filed both a motion to strike Lissauer's Declaration, ECF No. 25 ("Thryv MTS"), and its reply in support of the Motion to Transfer and Motion to Dismiss, ECF No. 26. In the Motion to Strike, Thryv objected to the form of Lissauer's Declaration and argued that it contained "inadmissible, conclusory, speculative, hearsay, or extra-record assertions." Thryv MTS at 1. Thryv moved "in the alternative for the Court to disregard" Lissauer's Declaration. *Id.*

On April 17, 2026, Storey, through the same counsel as Thryv, filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), or in the alternative, to

transfer venue to the Northern District of Texas. ECF No. 30. Storey also filed a declaration, in which he asserted that he is "a permanent resident of the State of Iowa, and [he] reside[s], work[s], and intend[s] to remain in the State of lowa, where [he] maintain[s his] home." Storey Decl. ¶ 5. Storey also asserted that "[a]ll contact between [he] and the Plaintiff was in [his] capacity as an employee of Thryv, and consisted of a single phone conversation that resulted from a call placed by the Plaintiff to Thryv." *Id.* ¶ 14.

On May 11, 2026, in response to both Thryv's and Storey's motions to dismiss and transfer, Plaintiff filed two identical copies of her own declaration. ECF Nos. 37, 39 (collectively, "Pl. Decl."); *see also* ECF Nos. 35–36 (comprising identical letters filed by Plaintiff's counsel, requesting the Court to consider Plaintiff's declaration in regard to both Thryv's and Storey's motions). On the same day, Plaintiff also filed another declaration by Plaintiff's counsel, Lissauer, in opposition to Storey's motion. ECF No. 38 ("Lissauer Decl. II").

In her declaration, Plaintiff asserted that beginning in October 2024, she spoke to Storey through the telephone on multiple occasions. Pl. Decl. ¶¶ 3–7. Specifically, she states that, during these calls, Storey "showed [her] various advertisements and did illustrations on the Yellow Page web site," and they "agreed on a listing which was subsequently published." *Id.* ¶¶ 5–6. Plaintiff also asserts that Storey represented to her that "he was [her] designated agent for Yellow Pages" and "was familiar with the New York market." *Id.* ¶¶ 7–8. Plaintiff asserts that Storey was "not happy" because Plaintiff wished to have a free, rather than paid, advertisement. *Id.* ¶ 8.

On May 22, 2026, Storey filed a motion to strike, or in the alternative for the Court to disregard, Plaintiff's declaration and Lissauer's second declaration. ECF No. 42 ("Storey MTS"). On the same day, Storey also filed a reply in support of his motion to dismiss. ECF No. 43. On June 8, 2026, in opposition to Storey's motion to strike, Plaintiff filed another declaration by her

counsel. ECF Nos. 46–47. Plaintiff filed two versions of this same declaration, with ECF No. 47 appearing to be an excerpt of ECF No. 46 ("Lissauer Decl. III").

## LEGAL STANDARD

### I. Motion to Strike

Federal Rule of Civil Procedure 12(f) allows a court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). To prevail on a Rule 12(f) motion to strike, the moving party "must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 721 (S.D.N.Y. 2019) (citing *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012)).

### II. Motion to Transfer

A district court may, "for the convenience of the parties and witnesses, [and] in the interest of justice, . . . transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). "The burden is on the moving party . . . to make a clear and convincing showing" that "(1) the action is one that might have been brought in the proposed transferee forum; and (2) the transfer promotes convenience and justice." *Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 600 (S.D.N.Y. 2009) (first quoting *Habrout v. City of N.Y.*, 143 F. Supp. 2d 399, 401 (S.D.N.Y. 2001); then quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 327 (E.D.N.Y. 2006)). An action "might have been brought in another forum if, at the time it was originally filed, the transferee court would have had both subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper [there]." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y.

2004) (citing *Schechter v. Tauck Tours, Inc.*, 17 F. Supp. 2d 255, 258 (S.D.N.Y. 1998)). The party requesting the transfer bears the burden of making a "strong case for transfer." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113 (2d Cir. 2010) (quoting *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)).

## III. Motion to Dismiss for Lack of Personal Jurisdiction

"On a Rule 12(b)(2) motion, [the] plaintiff carries the burden of demonstrating that jurisdiction exists, and where the district court did not conduct a full-blown evidentiary hearing on a motion, the plaintiff need make only a prima facie showing of jurisdiction." *Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012) (summary order) (cleaned up). "Because a motion to dismiss for lack of personal jurisdiction 'is inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion.'" *Vista Food Exchange, Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 307 (S.D.N.Y. 2015) (quoting *Pilates, Inc. v. Pilates Inst.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995)) (alteration in original). "At the pleading stage, a plaintiff may make a *prima facie* showing by relying on its pleadings and affidavits, and a showing of personal jurisdiction may be established solely by allegations." *Mersen USA EP Corp. v. TDK Elecs. Inc.*, 594 F. Supp. 3d 570, 578 (S.D.N.Y. 2022). "If the Court lacks personal jurisdiction over a defendant, the claims against that defendant must be dismissed." *Id.* Courts "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 14 (S.D.N.Y. 2022) (quoting *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 126 (2d Cir. 2008)).

## IV. Motion to Dismiss for Failure to State a Claim

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

## DISCUSSION

The Court first denies Defendant Thryv's and Defendant Storey's motions to strike Plaintiff's and her counsel's declarations filed in opposition to Defendants' motions to dismiss. However, the Court grants Defendants' alternative motion. The Court will disregard the declarations when considering Defendants' motions to dismiss for failure to state a claim, because such a motion is limited to the four corners of the pleading and may not be supplemented with additional factual material.

Next, the Court denies Defendants' motion to transfer because Thryv failed to sufficiently show that the relevant forum selection clause was reasonably communicated to Plaintiff. The

Court grants Defendant Storey's motion to dismiss for lack of personal jurisdiction. Finally, the Court denies Defendants' motions to dismiss Plaintiff's claim for defamation. However, the Court grants Defendants' motion to dismiss Plaintiff's NIED and IIED claims.

## I. The Court Denies Defendants' Motions to Strike, but Grants in Part Their Motions to Disregard

Defendants, collectively, request that the Court strike Plaintiff's and Plaintiff's counsel's declarations in opposition to Defendants' motions, or, in the alternative, request that the Court disregard them. *See generally* Thryv MTS; Storey MTS. These declarations include a mix of legal argument and newly alleged facts. *See* Lissauer Decl. I; Pl. Decl.; Lissauer Decl. II.

The Court agrees that these declarations are improper for the Court to consider with respect to Defendants' motions to dismiss for failure to state a claim. Generally, the Court is only permitted to consider on a motion to dismiss documents that are: "(1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint." *Sullivan v. Doctor's Assocs. LLC*, No. 19-CV-719 (GHW), 2020 WL 353752, at *4 (S.D.N.Y. Jan. 17, 2020) (citation omitted); *see also In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 252 (S.D.N.Y. 2024), *appeal dismissed*, No. 24-874, 2024 WL 4491699 (2d Cir. Aug. 28, 2024) (declining to consider a declaration that included unsupported factual assertions extraneous to the pleadings when resolving a Rule 12(b)(6) motion). Because Plaintiff is not proceeding pro se, she "may not raise new facts in opposing dismissal and ask the Court to rely on those facts in determining whether he or she has stated a claim." *See In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 541 (S.D.N.Y. 2021) (collecting cases). The Court is limited to considering the four corners of the pleading and cannot use the factual allegations outside of the pleadings asserted in the declarations in assessing whether Plaintiff stated any of her claims. *See* Lissauer Decl. I; Pl. Decl.; Lissauer Decl. II.

However, it is appropriate for the Court to consider these filings when considering Defendants' other motions. "Unlike motions made under Rule 12(b)(6), which must be converted by a court into a motion for summary judgment before extraneous material may be considered, other Rule 12(b) motions need not be converted for a court to look beyond the pleadings." *Linzer v. EMI Blackwood Music, Inc.*, 904 F. Supp. 207, 212 (S.D.N.Y. 1995) (citation omitted). Similarly, "[i]n deciding a motion to transfer, a court may consider material outside of the pleadings." *Mohsen v. Morgan Stanley & Co. Inc.*, No. 11-CV-6751 (PGG), 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (citation omitted). Furthermore, "[o]n a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court may look beyond the four corners of the complaint and consider all pleadings and accompanying affidavits and declarations, while still 'resolving all doubts in [the non-movant's] favor.'" *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 737 n.1 (S.D.N.Y. 2013) (quoting, *inter alia*, *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).

In sum, although the declarations are inappropriate with respect to Defendants' motions to dismiss for failure to state a claim, there is no need to strike them. *See Red Rock Sourcing, LLC v. JGX, LLC*, No. 21-CV-1054 (JPC), 2026 WL 161006, at *9 (S.D.N.Y. Jan. 21, 2026) (stating that in the alternative to granting a motion to strike, courts may "simply decline to consider evidence that is potentially inadmissible" (citation and internal quotation marks omitted)). Instead, the Court will simply disregard them when assessing whether Plaintiff stated a claim, and will consider them to the extent appropriate with respect to the other motions.

## II. The Court Denies Defendants' Motion to Transfer

Defendant Thryv next contends that this action should be transferred to the Northern District of Texas because of a forum selection clause contained in the Terms of Use on Defendants' website. Thryv MTD at 6–11.

28 U.S.C. § 1404(a) provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "[T]he party requesting transfer carries the burden of making out a strong case for transfer." *N. Y. Marine & Gen. Ins. Co v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (citation and internal quotation marks omitted).

However, where there is a forum selection clause in any agreement between the parties, a court will deny a motion to enforce that clause only in "extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). "Where the parties have contractually selected a forum, . . . . [t]he usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum." *Rabinowitz v. Kelman*, 75 F.4th 73, 81 (2d Cir. 2023) (internal citations and quotation marks omitted). This Circuit employs a four-part analysis to determine whether a forum selection clause is enforceable, considering:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3)

> whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum clause was communicated to the resisting party, has mandatory force[,] and covers the claims and parties involved in the dispute, it is presumptively enforceable. A party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Starkey v. G. Adventures, Inc.*, 796 F.3d 193, 196 (2d Cir. 2015) (citing *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d. Cir. 2014)) (cleaned up). When considering a motion to enforce a forum selection clause, a court "typically relies on pleadings and affidavits, viewed in light most favorable to the plaintiffs." *Cuhadar v. Savoya, LLC*, 766 F. Supp. 3d 434, 442 (E.D.N.Y. 2025) (internal citations and quotation marks omitted).

Here, Defendant Thryv, joined by Defendant Storey, asserts that transfer to the Northern District of Texas is proper because Plaintiff, as a user of the Website, agreed to Terms of Use published on the Website, which included "a mandatory venue provision designating the state and federal courts located in Tarrant County, Texas[,] as the venue for all disputes arising from the use of the YellowPages.com website." Thryv MTD at 3; ECF No. 31 ("Storey MTD") at 2. Specifically, pursuant to the Terms of Use provided on the Yellowpages.com website ¶ 6.1, as provided by Thryv:

> Exclusive venue and jurisdiction for all claims and disputes that are not subject to Informal Dispute Resolution . . . shall be in the state and federal courts located in Tarrant County, Texas, and you hereby consent and submit to the exclusive jurisdiction and venue of those courts and waive any defenses or objections based on the jurisdiction, venue, or convenience of these exclusive venues.

Terms of Use ¶ 6.1.

Furthermore, Thryv's "Manager of Client Care" and custodian of records, Karl Good, declared that "[a]ll users of Thryv's Yellowpages.com website and all business owners who

provide information to Thryv in connection with their free business listings that appear on the website are subject to the terms of use published on the website." Good Decl. ¶¶ 1, 4. Good also declared that "[t]he Terms of Use are hyperlinked and accessible from the YellowPages.com website," and that "[a]s a user and business listed on the Yellowpages.com website, Plaintiff agreed to be bound by the Terms of Use provided thereon." *Id.* ¶¶ 5–6.

However, Thryv fails to establish the first element of the forum selection clause analysis—that is, showing that the forum selection clause at issue was reasonably communicated to Plaintiff. *See Starkey*, 796 F.3d, at 196. Although according to the Good Declaration, all users and business owners who use the Website "are subject to the terms of use published," and "Plaintiff agreed to be bound by the Terms of Use provided thereon," Defendants provide no information about how Plaintiff assented to the Terms of Use or about the positioning and conspicuousness of the Terms of Use hyperlink. *See* Good Decl. ¶¶ 5–6. Defendants do not establish whether the Terms of Use constituted a "browsewrap" agreement—which lists terms and conditions "via a hyperlink at the bottom" of a website and requires "no affirmative action . . . by the website user to agree to the terms of a contract other than his or her use of the website"— or a "clickwrap" agreement—which "require[s] users to click an 'I agree' box after being presented with a list of terms and conditions of use." *Myer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).

If the Website's Terms of Use constituted a browsewrap agreement, "[b]ecause no affirmative action [was] required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of [its] validity . . . depends on whether the user ha[d] actual or constructive knowledge of a website's terms and conditions." *Id.* (citation omitted). To be bound by a browsewrap agreement, a user does not need "actual knowledge" of

the terms of use, so long as "a reasonably prudent person would be on inquiry notice of the terms." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023) (cleaned up).

"Whether a reasonably prudent user would be on inquiry notice depends on the '[c]larity and conspicuousness of arbitration terms,'" and "in the context of web-based contracts," this is often "a function of the design and content of the relevant interface." *Meyer*, 868 F.3d at 75 (internal citations omitted). Users do not have inquiry notice "when terms are linked in obscure sections of a webpage that users are unlikely to see." *Edmundson*, 85 F.4th at 704 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016)). Comparatively, "when terms are linked on an 'uncluttered' interface and temporally and 'spatially coupled with the mechanism for manifesting assent,' and the user does not need to scroll beyond what is immediately visible to find the terms, [this Circuit has] concluded, as a matter of law, that the interface provided reasonably conspicuous notice of the existence of contractual terms." *Id.* (quoting *Meyer*, 868 F.3d 66 at 78–79).

Here, Defendants have provided no information about the placement, sizing, and coloring of the Terms of Use hyperlink on the Website and if and how users like Plaintiff actively manifest their assent to the Terms of Use. As a result, the Court cannot ascertain whether this hyperlink was made available to users while signing up for their services, whether users were required to scroll through the Terms of Use, or otherwise. Without this information, Defendants have not carried their burden of showing that the Terms of Use, and the forum selection clause therein, was reasonably communicated to Plaintiff. Good's declaration, which conclusorily states that Plaintiff agreed to the Terms of Use and that the Terms of Use were "hyperlinked and accessible" from the Website, is simply insufficient. *See* Good Decl. ¶¶ 4–6. The Court cannot assume that a reasonably prudent user would have inquiry notice of the Terms of Use.

Additionally, "the cases in which courts have enforced browsewrap agreements have involved users who are businesses" or "sophisticated commercial entities who are repeat players." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836 (S.D.N.Y. 2012) (citation omitted); *see also Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 396 (E.D.N.Y. 2015) ("[C]ourts generally have enforced browsewrap terms only against knowledgeable accessors, such as corporations, not against individuals.") (collecting cases). Here, Plaintiff, as an independent contractor, is clearly not a sophisticated commercial entity that was likely to be aware of Defendants' terms.

Thryv has also not produced enough facts to establish that the Terms of Use constituted a clickwrap agreement. There is no evidence that Plaintiff affirmatively manifested assent, or specifically that Plaintiff was "require[d] . . . to click an 'I agree' box after being presented with a list of terms and conditions of use." *Meyer*, 868 F.3d at 75. And even if the Terms of Use did constitute a clickwrap agreement, Thryv still fails to establish the necessary reasonable notice. *See id.* at 76 ("Insofar as it turns on the reasonableness of notice, the enforceability of a web-based agreement is clearly a fact-intensive inquiry.").

As the moving parties, Defendants carry the burden to show that the forum selection clause was reasonably communicated, and the Court finds that Defendants have failed to meet their burden as to this requirement. Thus, the Court denies Defendants' motion to transfer.

## III. Storey's Motion to Dismiss for Lack of Personal Jurisdiction Is Granted

Defendant Storey is identified in the Complaint as an employee of the Entity Defendants—specifically, as the employee to whom Plaintiff spoke when she tried to get Defendants to take down the offending descriptions of her business. Compl. ¶¶ 53, 55, 71, 84, 86, 102, 115, 117, 133, 146, 148, 164. Plaintiff admits that Storey does not live in New York (in fact, he lives in Iowa). Lissauer Decl. II at 8. However, Plaintiff alleges that Storey personally

published the offending language. *See* Compl. ¶¶ 194–95. Thereby, she contends that Storey personally transacted business in New York either by causing the defamation to be posted or for not taking it down after Plaintiff's request. *See* Lissauer Decl. II at 6.

"In diversity cases arising in this Circuit, personal jurisdiction is determined by the law of the state in which the district court sits, which in this case is New York." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted). The analysis is threefold: First, the Court must determine whether jurisdiction is appropriate under New York's long-arm statute. *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 396 (S.D.N.Y. 2021). If yes, "then the [C]ourt must determine whether the exercise of jurisdiction comports with federal due process requirements—that is, whether 'the defendant has certain minimum contacts with the [s]tate such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). Finally, even if these two requirements are met, personal jurisdiction exists only where a plaintiff's service of process upon the defendant was procedurally proper. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *In re Kalikow*, 602 F.3d 82, 92 (2d Cir. 2010).

For the first step of this analysis, the applicable long-arm statutes are N.Y. C.P.L.R. § 301, which allows the exercise of general personal jurisdiction, and N.Y. C.P.L.R. § 302, which sets forth New York's specific jurisdiction requirements. Here, Plaintiff concedes that this Court does not maintain general personal jurisdiction over Defendant Storey.[3] Rather, Plaintiff

[3] In her complaint, Plaintiff alleges both "[t]hat at all times hereinafter mentioned, upon information and belief, the defendant, Daniel [Storey], was and still is a resident or the State of New York" and "[t]hat at all times hereinafter mentioned, upon information and belief, the defendant, Daniel [Storey], was and still is a resident outside the State of New York doing business inside the State of New York." Compl. ¶¶ 18–19. However, Plaintiff has clearly

contends that "long arm jurisdiction exists pursuant to CPLR 302(a)(1)" and argues only that Court has specific personal jurisdiction over Defendant Storey. Lissauer Decl. II at 6–11.

The Court thus considers whether it has specific personal jurisdiction over Defendant Storey, and determines that here, it does not. Finally, the Court determines that jurisdictional discovery is unwarranted.

### A. The Court Does Not Have Specific Personal Jurisdiction Over Storey

N.Y. CPLR § 302(a) establishes how specific jurisdiction may arise from a foreign defendant's contacts with New York in connection with the cause of action. Here, Plaintiff has failed to meet her burden of making a *prima facie* case that Defendant Storey is subject to this Court's personal jurisdiction under New York law.

#### i. There Is No Personal Jurisdiction over Storey under CPLR § 302(a)(2) and (a)(3)

Sections 302(a)(2) and (a)(3) permit specific jurisdiction over certain tortious acts—however, both explicitly exclude cause of actions for defamation. "Defamation claims are singled out for 'separate treatment to reflect the state's policy of preventing disproportionate restrictions on freedom of expression.'" *Lively v. Wayfarer Studios LLC*, 810 F. Supp. 3d 421, 434 (S.D.N.Y. 2025) (quoting *SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 404 (2012)). Section 302(a)(2) extends specific jurisdiction to any non-domiciliary who "commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act*." N.Y. C.P.L.R. § 302(a)(2) (emphasis added). Similarly, under

---

abandoned her allegation that Plaintiff is a resident of New York state. *See* Lissauer Decl. at 8–9 (stating that "I understand that [Storey] has never lived in New York" and referring to Storey as a "non-resident defendant"). Storey himself attests that he lives in Iowa. *See* Storey Decl. ¶ 5 ("I am a permanent resident of the State of Iowa, and I reside, work, and intend to remain in the State of lowa, where I maintain my home.").

Section 302(a)(3), a New York court may exercise personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state, *except as to a cause of action for defamation of character arising from the act*." N.Y. C.P.L.R. § 302(a)(3) (emphasis added).

"Crucially, the exception applies not only to those claims labeled 'defamation,' but also to those sounding in defamation." *Lively*, 810 F. Supp. 3d at 434 (emphasis omitted). "Courts thus look to the substance, not merely the name, of a claim to determine whether it sounds in defamation." *Id.* at 435 (citation and internal quotation marks omitted) (collecting cases). "New York law considers claims sounding in tort to be defamation claims where those causes of action seek damages only for injury to reputation, or where the entire injury complained of by plaintiff flows from the effect on his reputation." *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (summary order) (quoting *Jain v. Sec. Indus. & Fin. Mkts. Ass'n*, 8-CV-6463 (DAB), 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28, 2009)) (cleaned up).

Here, Plaintiff asserts a defamation claim against Storey, as to which specific jurisdiction is plainly foreclosed by the long arm statute. But her claims sounding in NIED and IIED are also foreclosed because they "arise[] from the same set of facts as a pleaded defamation claim." *Lively*, 810 F. Supp. 3d at 435. Therefore, the Court applies New York's long-arm statute's defamation exception to Plaintiff's NIED and IIED claims. *See Shamoun v. Mushlin*, 12-CV-3541 (AJN), 2014 WL 12776779, at *4 (S.D.N.Y. Mar. 26, 2014) (extending the defamation exception of Sections 302(a)(2) and (a)(3) to, and declining to exercise personal jurisdiction over, IIED and NIED claims that were "based on allegations that the Defendants published false claims about Plaintiffs online").

Accordingly, specific personal jurisdiction over Plaintiff's claims cannot be established under either CPLR § 302(a)(2) or CPLR § 302(a)(3).

**ii. There Is No Personal Jurisdiction over Storey Under CPLR § 302(a)(1)**

The Court next turns to CPLR § 302(a)(1). "Even though CPLR §§ 302(a)(2) and (3) exclude defamation, a plaintiff can still acquire jurisdiction under [S]ection 302(a)(1)." *Donner v. DER SPIEGEL Gmbh & Co. KG*, 747 F. Supp. 3d 681, 689 (S.D.N.Y. 2024), *aff'd*, No. 24-2654-CV, 2025 WL 2985764 (2d Cir. Oct. 23, 2025). Under Section 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state" so long as the "cause of action aris[es] from" that "transact[ion]." N.Y. C.P.L.R. § 302(a)(1). In other words, under Section 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)) (alteration in original).

Regarding the first prong, "[a] nondomiciliary 'transacts business' under CPLR 302(a)(1) when he 'purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (cleaned up). "Because N.Y. C.P.L.R. § 302(a)(1) is a single act statute, proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities there were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Weintraub v.*

*Empress Travel Trevose, Two-L's Ltd.*, No. 17-CV-552 (PGG), 2018 WL 4278336, at *4 (S.D.N.Y. Mar. 6, 2018) (cleaned up).

The Second Circuit has stated that "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007). Specifically, "when the defamatory publication itself constitutes the alleged transaction of business for the purposes of [S]ection 302(a)(1), more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it," because "[i]n defamation cases . . . the single act of uttering a defamation, no matter how loudly, is not a transaction of business that may provide the foundation for personal jurisdiction." *Id.* (cleaned up). Specifically, several federal courts "have concluded that the posting of defamatory material on a website accessible in New York does not, without more, constitute 'transact[ing] business' in New York for the purposes of New York's long-arm statute." *Id.* at 250 (citations omitted).

Therefore, even if Storey himself published the advertisements at issue, *see* Compl. ¶¶ 194–95, that publication alone would be insufficient to establish personal jurisdiction over him under Section 301(a)(1). *See Lively*, 810 F. Supp. 3d at 448 (determining that "creating a website with information or statements about a New York-related subject matter and which is accessible in New York" is not "enough to establish personal jurisdiction under 302(a)(1)"). Furthermore, courts have determined that even when statements "'target[]' New York in the sense that they were mainly relevant to and likely to be read by plaintiff's potential customers in New York," *Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198, 203 (E.D.N.Y. 2014), those statements do not establish personal jurisdiction when they are published on an online medium "equally accessible in [New York and] any other jurisdiction," *SPCA*, 18 N.Y.3d at 405.

Instead, "New York courts have found jurisdiction in cases where the defendants' out-of-state conduct involved defamatory statements projected into New York and targeting New Yorkers, but only where the conduct also included something more." *Best Van Lines*, 490 F.3d at 249. "The 'something more' standard is satisfied when at least part of the defamatory content was created, researched, written, developed, or produced in New York." *Prince v. Intercept*, 634 F. Supp. 3d 114, 129 (S.D.N.Y. 2022) (citation and internal quotation marks omitted); *see also Donner*, 747 F. Supp. 3d at 692 (holding that "there must be some connection to the actual writing or editing of the article which underlies the cause of action, not simply an allegation that the article was distributed").

Here, it is undisputed that Defendant Storey is a "permanent resident of the State of Iowa," where he "reside[s], work[s], and intend[s] to remain," and has never resided in New York. Storey Decl. ¶¶ 5, 7; *see also* Lissauer Decl. II at 8 ("It is acknowledged that Storey is a resident of Iowa. I understand that he has never lived in New York . . . ."). Storey also declared that "[a]ll contact between myself and the Plaintiff was in my capacity as an employee of Thryv, and consisted of a single phone conversation that resulted from a call placed by the Plaintiff to Thryv." Storey Decl. ¶ 14.

In contrast, Plaintiff and her counsel assert that Storey's contacts with New York are his multiple phone conversations with Plaintiff and alterations of Plaintiff's listing on the Website. *See* Lissauer Decl. II at 8; Pl. Decl. ¶¶ 4–10; Compl. ¶¶ 53, 71, 194, 206. Plaintiff asserts that during these calls Storey "showed [her] various advertisements and did illustrations on the Yellow Page web site," and they "agreed on a listing which was subsequently published." Pl. Decl. ¶¶ 5–6. Plaintiff also asserts that Storey represented to her that "he was [her] designated agent for Yellow Pages" and "was familiar with the New York market." *Id.* ¶¶ 7–8. The Court,

however, notes that Plaintiff also states that she also communicated with multiple other representatives of Thryv. *See id.* ¶¶ 13, 16.

Even assuming that there were multiple, rather than one, phone calls between Plaintiff and Storey, and that Storey did represent himself as familiar with the New York market, Storey's conduct does not constitute the "something more" required. Courts have repeatedly determined that phone calls made by an out-of-state resident do not constitute transacting business. For example, in *SPCA*, the New York Court of Appeals determined that there was no personal jurisdiction over a defendant in a defamation case who made three phone calls to the New York resident plaintiff, made a $1,000 donation to the plaintiff, twice drove to the plaintiff in New York, and published posts on her organization's website regarding plaintiff. 18 N.Y.3d at 402–03. Similarly here, Defendant Storey's phone calls with Plaintiff do not "justify bringing [him] before the New York courts." *Id.* at 405 (citation omitted). And unlike the defendant in *SPCA*, there is no allegation that Storey ever set foot in New York as part of his work with Plaintiff. *Cf. Trachtenberg*, 43 F. Supp. 3d at 204–05 (granting a motion to dismiss a defamation claim for lack of personal jurisdiction because "[b]asing an article on information received out-of-state from a New York source is simply not the same as coming to New York to conduct research").

Furthermore, to the extent that Storey had other business dealings in New York with other YellowPages users and advertisers, as Plaintiff's counsel contemplates, Lissauer Decl. II at 7, 9, this fact would be of no effect here. Conduct unrelated to the alleged defamatory statements at issue is too attenuated from the case at hand to give rise to specific personal jurisdiction. *See Kingstown Cap. Mgmt. L.P. v. CPI Prop. Grp., S.A.*, 167 N.Y.S.3d 92, 94 (1st Dep't 2022) (declining to exercise personal jurisdiction when the "plaintiffs failed to demonstrate an

articulable nexus between [the] defendants' New York activities and the cause of action for defamation").

In sum, Defendant Storey's phone calls with Plaintiff are insufficient to meet the "something more" standard of defamation cases, and the Court lacks personal jurisdiction over Defendant Storey in this action.[4] Accordingly, the Court grants Defendant Storey's motion to dismiss for lack of personal jurisdiction.

**IV. Defendants' 12(b)(6) Motions to Dismiss Are Denied in Part and Granted in Part**

Defendants argues that Plaintiff has failed to state viable claims of defamation (Counts One, Four, Seven, Ten, and Thirteen), NIED (Counts Two, Five, Eight, Eleven, and Fourteen), and IIED (Counts Three, Six, Nine, Twelve, and Fifteen).

The Court first determines that New York law governs all of Plaintiff's claims. Then, the Court analyzes each substantive claim in turn and determines that Plaintiff has sufficiently stated her defamation claims, but not her NIED or IIED claims.

Additionally, the Court dismisses Plaintiff's Count Sixteen, which is not a standalone claim, but rather a request for compensatory and punitive damages. This "count" is simply Plaintiff's requested relief in the event she prevails on other, substantive claims.

---

[4] Because Plaintiff "fail[s] to make the . . . prima facie showing necessary for the Court to exercise jurisdiction over the Defendants pursuant to [S]ection 302(a)(1)," "[t]he Court therefore need not determine whether the Plaintiff's claims arise from those transactions [or] whether the exercise of jurisdiction would comport with due process." *Shamoun v. Mushlin*, No. 12-CV-3541(AJN), 2014 WL 12776779, at *8 (S.D.N.Y. Mar. 26, 2014).

Additionally, although Plaintiff does not explicitly request jurisdictional discovery, her counsel stated multiple times that "[w]ithout discovery, dismissal based upon CPLR section 302(a)(1) is inappropriate." *See, e.g.*, Lissauer Decl. II at 6. Here, Plaintiff "has failed to make out a prima facie case of personal jurisdiction under New York law because [Storey's] website postings did not constitute 'transacting business under section 302(a)(1).'" *Donner*, 747 F. Supp. 3d at 690 (quoting *Best Van Lines*, 490 F.3d at 254). Therefore, the Court denies any request for jurisdictional discovery.

**A. New York Law Governs Plaintiff's Claims**

"In diversity jurisdiction cases such as this, it is well settled that a federal court must look to the choice of law rules of the forum state." *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 818 (S.D.N.Y. 2021) (quoting *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)). "The preferred analytical tool in tort cases under New York choice of law rules is to apply interest analysis, where the policies underlying the competing laws are considered." *Id.* (citing *Fin. One Pubc. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 336 (2d Cir. 2005)) (cleaned up). "In general, under New York choice of law principles 'the law of the place of the tort governs.'" *Fisher v. APP Pharms., LLC*, 783 F. Supp. 2d 424, 428 (S.D.N.Y. 2011) (quoting *Padula v. Lilarn Prop. Corp.*, 84 N.Y.2d 519, 522 (1994)). A court must endeavor to apply the law of the jurisdiction having the "most significant" relationship to the transaction and parties. *Press v. Primavera*, 685 F. Supp. 3d 216, 226–27 (S.D.N.Y. 2023). In short, a court should give effect to the "law of the jurisdiction with the strongest interest in the resolution of the particular issue presented." *Fed. Hous. Fin. Agency v. Ally Fin. Inc.*, No. 11-CV-7010 (DLC), 2012 WL 6616061, at *5 (S.D.N.Y. Dec. 19, 2012) (citation omitted).

Thryv argues that the parties agreed that Texas law governs all disputes arising out of Plaintiff's use of Yellowpages.com, based on the Terms of Use ¶ 6.1, which states: "You agree that this TOU and any dispute arising in connection with your use or our provision of the YP Sites/Services will be governed by and construed in accordance with, Texas law without reference to the laws relating to conflicts of laws." *See* Thryv MTD at 10 ("Here, the parties agreed that all disputes regarding Plaintiff's use of YellowPages.com would be governed by Texas law . . . ."). However, for the same reasons discussed with regard to the forum selection

clause, *see supra* Section II, Defendant has not sufficiently shown that Plaintiff assented to the Website's Terms of Use.

Additionally, in support of its motion to dismiss for failure to state a claim, Thryv cites only to New York federal and state cases. *See* Thryv MTD at 11–15. Because Thryv assumes the applicability of New York law, the Court will also apply New York law to each claim. *See Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 259 (S.D.N.Y. 2023) (applying New York law where both parties cite to New York law); *BYD Co. LTD. v. VICE Media LLC*, 531 F. Supp. 3d 810, 818 (S.D.N.Y. 2021), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022) (applying New York law where "both sides cite exclusively to New York law in their respective briefings.").

**B. The Motions to Dismiss Plaintiff's Claims for Defamation Per Se Are Denied**

Plaintiff asserts, against each individual Defendant, claims for both defamation and defamation per se in Counts One, Four, Seven, Ten, and Thirteen.

"Defamation is the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of plaintiff in the minds of right-thinking persons, and to deprive plaintiff of their friendly intercourse in society." *Rapaport v. Epstein*, No. 24-CV-7439 (JGLC), 2025 WL 966794, at *10 (S.D.N.Y. Mar. 31, 2025) (quoting *3P-733, LLC v. Tawan Davis*, 135 N.Y.S.3d 27, 29–30 (1st Dep't 2020)). "There are two categories of defamation under New York law: *libel*, for written statements, and *slander*, for spoken statements." *Carroll v. Trump*, 650 F. Supp. 3d 213, 225 (S.D.N.Y. 2023). The Court understands, as Plaintiff argues, the alleged defamatory statement to be libel, rather than slander, because the statements were published on the Yellowpages Website. *See* Compl. ¶ 68.

Under New York law, a claim for libel requires a plaintiff to allege (1) "a written defamatory statement of fact concerning the plaintiff," (2) "publication to a third party," (3) the applicable level of fault, (4) "falsity," and (5) "special damages" or a showing of libel per se. *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). "At the motion to dismiss stage, the Court must decide whether the statements, considered in the context of the entire publication, are reasonably susceptible of a defamatory connotation, such that the issue is worthy of submission to a jury." *BYD Co. Ltd.*, 531 F. Supp. 3d at 818 (citation and internal quotation marks omitted).

Regarding the first element, a plaintiff "must plead the defamatory statements with some particularity," which requires her to "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 196–97 (S.D.N.Y. 2023) (citations omitted). Here, Plaintiff has alleged that around February 7, 2025, on the Yellowpages Website, which is publicly accessible, her business listing was associated with the phrases "exotic," "Russian," and "nude, gay massage." Compl. ¶¶ 58–60. Therefore, Plaintiff has identified who made the statements (those operating the Website), and other concrete details regarding their timing and audience. In doing so, Plaintiff also satisfies the second element—that the statement was publicized to third parties—because she alleges that the Website and its listing of Plaintiff's business was published online and was publicly accessible. *See id.*

Furthermore, Plaintiff alleges the third element, which is the applicable level of fault. "[T]he showing of fault necessary to recover for libel varies depending on a plaintiff's position in society, requiring a higher degree of fault for public officials and public figures." *Celle*, 209 F.3d

at 176. There are no facts to suggest that Plaintiff is a public official or public figure. Therefore, as a private plaintiff, Plaintiff need only allege that Defendants acted with "gross negligence." *Coleman v. Grand*, 523 F. Supp. 3d 244, 254 (E.D.N.Y. 2021), *aff'd*, 158 F.4th 132 (2d Cir. 2025) (citation omitted). "Gross negligence is defined as 'conduct that evinces a reckless disregard for the rights of others or "smacks" of intentional wrongdoing.'" *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 204 F. Supp. 2d 639, 644 (S.D.N.Y. 2002) (quoting *Am. Telephone & Telegraph Co. v. The City of N.Y.*, 83 F.3d 549, 556 (2d Cir. 1996)). "To constitute gross negligence, the act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care." *Id.* (citation and internal quotation marks).

Here, Plaintiff alleges that the Entity Defendants operate and manage the Website. *See* Compl. ¶¶ 23–26, 35, 40, 45, 50. Plaintiff also alleges that she informed Defendant Storey about the erroneous listing as a representative of the Entity Defendants, but that listings remained on the Website unchanged. *Id.* ¶¶ 71–72. If true, Defendants, as operators and managers of the Website, should have had regard for the accuracy of its business listings, especially when personally contacted by a listing's owner. At this stage, because Defendants were on notice as to the erroneous listing, but failed to act, Plaintiff has sufficiently alleged gross negligence.

Additionally, Plaintiff sufficiently alleges the fourth element of falsity. Plaintiff must "plead facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). Plaintiff alleges that the Website's association of her business with the terms "exotic," "Russian," and "nude, gay massage," was "false, inaccurate[,] and not true," Compl. ¶¶ 59, 61. By alleging that the characterizations are false—that is, that Plaintiff does not offer massages of these types—Plaintiff sufficiently pleads falsity at this stage.

So the question is whether Plaintiff is required to plead special damages—a necessary elements in a libel per quod case—or whether she has pleaded libel per se, as to which no special damages need to be pleaded. "In a claim of defamation per quod, 'no defamatory statement is present on the face of the communication but a defamatory import arises through reference to facts extrinsic to the communication.'" *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 63 (S.D.N.Y. 2021) (quoting *Ava v. NYP Holdings, Inc.*, 885 N.Y.S.2d 247, 251 (1st Dep't 2009)). "For a claim of defamation per quod, there is an additional requirement that the plaintiff plead special damages—that is, actual harm." *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 145 (S.D.N.Y. 2022) (cleaned up).

However, "even where the plaintiff has shown no actual damages at all," a plaintiff may state a claim of defamation per se because the nature of the defamatory statement makes it so "injury is assumed." *Celle*, 209 F.3d at 179 (cleaned up). A plaintiff can make a showing of "libel per se" if "it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons." *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977). Specifically, "[d]efamation per se consists of any one of the following: (1) a statement charging an individual with a serious crime; (2) a statement that tends to injure another in his or her trade, business, or profession; (3) a statement that claims an individual has a loathsome disease, or (4) a statement imputing unchastity to a woman." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 419 (S.D.N.Y. 2013) (cleaned up). "Challenged statements are not to be read in isolation, but must be perused as the average reader would against the whole apparent scope and intent of the writing." *Celle*, 209 F.3d at 177 (citation and internal quotation marks omitted).

Here, Plaintiff has sufficiently pleaded libel per se, because the advertisements at issue are sexualized and so are injurious to Plaintiff's massage business and professional reputation on their face. "The 'trade, business or profession' exception is only available when the defamation is 'of a kind incompatible with the proper conduct of the business, trade, profession, or the office itself.'" *Kalimantano GmbH*, 939 F. Supp. 2d at 419 (citing *Liberman v. Gelstein*, 80 N.Y.2d 429, 436 (1992)). "The statement 'must be made with reference to a matter of significance and importance for [the operation of the business], rather than a more general reflection upon the plaintiff's character or qualities.'" *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) (quoting *Liberman*, 80 N.Y.2d at 436) (alteration in original). "Defamation *per se* has been defined both as statements that cast doubt on a particular quality at the very heart of a profession and statements that impugn the basic integrity of a business." *Unlimited Cellular*, 677 F. Supp. 3d 186, 198 (S.D.N.Y. 2023) (citing *Kforce, Inc. v. Alden Pers., Inc.*, 288 F. Supp. 2d 513, 516 (S.D.N.Y. 2003)). For example,

> [i]t is actionable without proof of damage to say of a physician that he is a butcher, of an attorney that he is a shyster, of a school teacher that he has been guilty of improper conduct as to his pupils, of a clergyman that he is the subject of scandalous rumors, of a chauffeur that he is habitually drinking, of a merchant that his credit is bad or that he sells adulterated goods, of a public officer that he has accepted a bribe or has used his office for corrupt purposes—since these things discredit one in his chosen calling.

*Celle*, 209 F.3d at 180 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 112, at 791 (5th ed. 1984)) (cleaned up).

Here, Plaintiff has adequately pled the trade, business or profession exception, because the terms associated with her business listing ("exotic," "Russian," "gay," and even "nude") impugn the basic integrity of a legitimate therapeutic massage business and suggest instead that the plaintiff is offering sexualized services. Especially when considered together, these explicit

and unambiguous terms clearly color Plaintiff's business in a salacious light and suggest that she offers services designed to provide sexual gratification—even a form of prostitution. In other words, the online advertisements impugn a legitimate massage business at its "basic integrity, creditworthiness[,] and competence," because an average, reasonable consumer would not engage such a masseuse when desiring a legitimate massage therapist. *Celle*, 209 F.3d at 180 (citation omitted).

A massage therapist's provision of sexual massages does more than "generally reflect upon [Plaintiff's] character, qualities, and even job performance," and suggests illicit conduct "'incompatible' with her ability to be a" legitimate massage therapist. *Pierce v. Better Holdco, Inc.*, No. 22-CV-4748 (AT), 2023 WL 6386920, at *9 (S.D.N.Y. Sept. 29, 2023). In *Pierce*, the court denied a motion to dismiss a plaintiff's defamation claim, because the statement at issue was defamatory per se when it "'impute[d] some form of fraud or misconduct' to [the plaintiff], thus effecting reputational injury to her as a professional." *Id.* at *10 (quoting *Pure Power Boot Camp, Inc.*, 813 F. Supp. 2d at 550). Likewise, here, the statements at issue impute misconduct (offering sexual services) to Plaintiff's massage therapy business, and clearly would affect reputational injury to her as a licensed therapist. Therefore, Plaintiff has adequately stated defamation per se under the trade, business, or profession exception.

In conclusion, Plaintiff has sufficiently alleged libel per se, because the advertisements at issue are injurious to Plaintiff's business on their face. Accordingly, the Court denies Defendants' motions to dismiss Plaintiff's defamation claims (Counts 1, 4, 7, 10, and 13).

### C. The Motions to Dismiss Plaintiff's NIED Claims Are Granted

Plaintiff has failed to state her NIED claims—Counts 2, 5, 8, 11, and 14—because the allegations do not fall within any of the recognized categories for asserting an NIED claim under

New York law. Moreover, as with her IIED claims, Plaintiff's NIED claims are impermissibly duplicative of her defamation claims.

"A cause of action to recover damages for negligent infliction of emotional distress generally must be premised upon the breach of a duty owed to the plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety." *Lea v. McNulty*, 212 N.Y.S.3d 152, 156 (2d Dep't 2024) (cleaned up). None of the three "limited recognized contexts in which a claim of NIED may be viable" apply here. *Truman v. Brown*, 434 F. Supp. 3d 100, 122–23 (S.D.N.Y. 2020). Two of these three theories, the bystander theory and the direct duty theory, require allegations that the plaintiff was "threatened with physical harm" or that her physical safety was "unreasonably endangered." *Id.* (citations omitted). As to the third theory, the facts of this case do not conform to any of the "special circumstances" cases recognized by New York law, which include "a hospital negligently informing an individual that her parent had died; a negligent misdiagnosis of HIV; and the mishandling of a loved one's remains." *Id.* at 123 (internal citations omitted).

Furthermore, "New York law explicitly bars recovery for negligent or intentional infliction of emotional distress when such claims are based on conduct that is embraced by a traditional tort remedy." *Mahn v. Allegis Grp., Inc.*, No. 24-CV-8326 (GHW), 2025 WL 1504812, at *17 (S.D.N.Y. May 24, 2025) (collecting cases). Plaintiff alleges no facts specific to her NIED claims or that differ from the facts underlying her defamation claims. "New York courts, accordingly, have dismissed NIED claims that are duplicative of defamation claims." *Id.* (dismissing plaintiff's NIED claim because it was "premised on the same allegations as her claims for defamation and abuse of process") (collecting cases). Therefore, Plaintiff's NIED claims fail on the separate basis that they are improperly duplicative of her defamation claims.

Therefore, the Court grants Defendants' motions to dismiss Plaintiff's NIED claims (Counts 2, 5, 8, 11, and 14).

**D. The Motions to Dismiss Plaintiff's IIED Claims Are Granted**

Plaintiff's IIED claims (Counts 3, 6, 9, 12, and 15) fail both because she fails to allege extreme and outrageous conduct and because they are improperly duplicative of her defamation claims.

"In New York, the tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Akhtar v. Aggarwala*, No. 23-CV-6585 (JGLC) (VF), 2024 WL 3862504, at *11 (S.D.N.Y. June 5, 2024), *report and recommendation adopted sub nom.*, *Akhtar v. Adams*, 2024 WL 3862673 (S.D.N.Y. Aug. 19, 2024), *appeal dismissed*, No. 24-2370, 2025 WL 2625360 (2d Cir. July 31, 2025) (citation and internal quotation marks omitted). To constitute "extreme and outrageous conduct," the conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Tebbenhoff v. Elec. Data Sys. Corp.*, 244 F. App'x 382, 384 (2d Cir. 2007) (summary order) (citations and internal quotation marks omitted). "Courts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment or intimidation." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 331 (S.D.N.Y. 2010) (quoting *Cohn–Frankel v. United Synagogue of Conservative Judaism*, 667 N.Y.S.2d 360, 362 (1st Dep't 1998)).

Here, Plaintiff alleges that the "statements, actions[,] and/or omissions," published by Defendants "characterizing her business as 'exotic,' 'Russian' and 'nude, gay massage,'" caused

her "severe personal, emotional and psychological injuries and distress." Compl. ¶¶ 90, 105, 111. Nevertheless, these statements—which fall well short of a malicious campaign of harassment or intimidation—do not meet the high threshold of extreme and outrageous conduct.

Furthermore, in bringing her IIED claims, Plaintiff did "not plead any facts beyond those necessary to sustain her claims for defamation," *McCollum v. Baldwin*, 688 F. Supp. 3d 117, 133 (S.D.N.Y. 2023), so the Court need not entertain this duplicative claim. *See Lally v. Klick USA, Inc.*, No. 23-CV-10293 (MKV), 2025 WL 786576, at *6 (S.D.N.Y. Mar. 11, 2025) (dismissing an IIED claim in part because it was "duplicative of [the plaintiff's] defamation claim"); *Worob v. Campbell*, 252 N.Y.S.3d 158, 162 (2d Dep't 2026) (affirming dismissal of an IIED claim that was "duplicative of the causes of action to recover damages for defamation and defamation per se").

Because Plaintiff failed to plead the elements of IIED and because her defamation and IIED claims arise from the same underlying facts, the Court dismisses Plaintiff's IIED claims (Counts 3, 6, 9, 12, and 15).

### E. The Motion to Dismiss Plaintiff's Cause of Action for Punitive Damages Is Granted

"New York does not recognize a separate cause of action for punitive damages." *ACR Sys., Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 479 (S.D.N.Y. 2017) (citing *Martin v. Dickson*, 100 F. App'x. 14, 16 (2d Cir. 2004) (summary order)). Therefore, the Court dismisses as a separate cause of action Count Sixteen, which consisted solely of Plaintiff's request for punitive damages and reiteration of her demand for $15 million in damages based on her substantive claims. *See* Compl. ¶¶ 217–19.

**CONCLUSION**

For the foregoing reasons, Defendants Thryv's and Storey's Motions to Strike and Motions to Transfer are DENIED. Defendants' Motions in the Alternative to Disregard are GRANTED IN PART. Defendant Storey's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED. Defendants' Motions to Dismiss for Failure to State a Claim are DENIED IN PART with regards to Plaintiff's defamation claims, but GRANTED IN PART with regard to Plaintiff's NIED and IIED claims. Accordingly, the Court dismisses Defendant Storey without prejudice and Plaintiff's NIED and IIED claims with prejudice.

The Court will separately issue a notice of initial pretrial conference.

The Clerk of Court is directed to terminate ECF Nos. 18, 25, 30, and 42.

Dated: September 30, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge